**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| Blackjewel, L.L.C., *et al*. | ) | Case No. 19-30289 |
| | ) | |
| Debtors[1], | ) | (Jointly Administered) |
| _____ | ) | |
| | ) | |
| BLACKJEWEL, L.L.C., BLACKJEWEL | ) | Adv. Proceeding No. _____ |
| HOLDINGS L.L.C., REVELATION | ) | |
| ENERGY HOLDINGS, LLC , | ) | |
| REVELATION MANAGEMENT | ) | |
| CORPORATION, REVELATION | ) | |
| ENERGY, LLC, DOMINION COAL | ) | |
| CORPORATION, HAROLD KEENE | ) | |
| COAL CO. LLC , VANSANT COAL | ) | |
| CORPORATION, LONE MOUNTAIN | ) | |
| PROCESSING, LLC, POWELL | ) | |
| MOUNTAIN ENERGY, LLC, and | ) | |
| CUMBERLAND RIVER COAL LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFREY A. HOOPS, SR., | ) | |
| | ) | |
| LEXINGTON COAL ROYALTY | ) | |
| COMPANY, LLC, | ) | |
| | ) | |
| TRIPLE H REAL ESTATE, LLC, | ) | |
| | ) | |
| CONSTRUCTION & RECLAMATION | ) | |
| SERVICES, LLC | ) | |
| | ) | |
| Defendants. | ) | |

---

[1] The Debtors in these Chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Blackjewel, L.L.C. (0823); Blackjewel Holdings L.L.C. (4745); Revelation Energy Holdings, LLC (8795); Revelation Management Corporation (8908); Revelation Energy, LLC (4605); Dominion Coal Corporation (2957); Harold Keene Coal Co. LLC (6749); Vansant Coal Corporation (2785); Lone Mountain Processing, LLC (0457); Powell Mountain Energy, LLC (1024); and Cumberland River Coal LLC (2213). The headquarters for each of the Debtors is located at P.O. Box 1010, Scott Depot, West Virginia 25560.

## COMPLAINT

The debtors and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), as plaintiffs in the above-captioned adversary proceeding ("Plaintiffs"), for their complaint ("Complaint") against the defendants identified below (sometimes collectively "Defendants"), state and aver as follows.

### Nature of the Case

1.    This adversary proceeding seeks to recover damages for injury to Plaintiffs proximately caused by Defendants' actions, to avoid and recover fraudulent transfers made to and for the benefit of Defendants pursuant to Sections 548 and 550 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* and applicable state law, and to subordinate claims.

### Jurisdiction and Venue

2.    The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and Plaintiffs consent to entry of final judgment by the Bankruptcy Court.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

### Parties

3.    Blackjewel, L.L.C. ("Blackjewel") and the other Plaintiffs are debtors and debtors-in-possession in the above-captioned chapter 11 cases.  On July 1, 2019 (the "Petition Date"), the Debtors filed voluntary chapter 11 petitions in this Court.

4.    Jeffrey A. Hoops, Sr. ("Hoops") is the former President and Chief Executive Officer of Blackjewel.  Hoops is also the former President and Chief Executive Officer of Blackjewel Holdings, L.L.C., Revelation Energy Holdings, LLC, Revelation Management Corporation, and Revelation Energy, LLC and was involved in the operations and governance of

all of the Debtors.  Hoops and members of his family hold ownership interests in the Defendants, either directly or indirectly.

5.        Triple H Real Estate, LLC ("Triple H") is, upon information and belief, a West Virginia limited liability company.  On information and belief, Triple H's sole member is Clearwater Investment Holdings, LLC ("Clearwater").  Upon information and belief, Clearwater is owned by Hoops' wife, Patricia Hoops, and a trust associated with Hoops and members of his family.

6.        Lexington Coal Royalty Company, LLC ("LC-RC") is, upon information and belief, a West Virginia limited liability company whose sole member is Clearwater.

7.        Construction & Reclamation Services, LLC ("CRS") is, upon information and belief, a West Virginia limited liability company.  On information and belief, the sole member of CRS is Lexington Coal Company, LLC, which is owned (through various holdings companies) by a trust associated with Hoops and members of his family.  On information and belief, Hoops' spouse is the trustee of that trust.

## Allegations Common to All Claims

8.        Hoops caused Plaintiffs to engage in numerous improper, unfair, and unreasonable transactions with Defendants.  These transactions were unauthorized self-dealing by Hoops because the transactions were intended to, and did, benefit Hoops, members of his family, and entities associated with them to the detriment of Plaintiffs and their creditors.

**UNJUSTIFIED ROYALTIES TO TRIPLE H**

9.        Hoops caused Plaintiff Revelation Energy, LLC ("Revelation") to grant certain royalties to Triple H.  Revelation provided to Triple H:  a certain Deed of Overriding Royalty December 1, 2016 ("Deed 1"); a certain Deed of Overriding Royalty dated December 2, 2016 ("Deed 2"); and a certain Deed of Overriding Royalty dated December 2, 2016 ("Deed 3") (Deed

1, Deed 2, and Deed 3 sometimes collectively the "Triple H Royalty Deeds").  True and accurate

copies of Deed 1, Deed 2, and Deed 3 are attached as Plaintiffs Exhibits A, B, and C, respectively,

and incorporated herein by reference.

10.      Under the Triple H Royalty Deeds, Revelation agreed to pay Triple H an overriding

royalty interest relating to coal mined from certain properties owned or leased by Revelation.

Specifically, pursuant to the Triple H Royalty Deeds, Revelation agreed to pay to Triple H a

monthly royalty equal to the greater of (a) one percent of the gross selling price for any coal mined

and sold, or (b) fifty cents per ton of coal mined and sold, from the properties to which the Triple

H Royalty Deeds related.

11.      Triple H did not provide any consideration for receiving the Triple H Royalty Deeds

in December 2016.  The Triple H Royalty Deeds refer to certain unspecified "financial incentives"

allegedly provided by Triple H in 2016.  No payment, agreement, or other consideration provided

by Triple H supported Revelation's agreement to pay the royalties provided in the Triple H Royalty

Deeds.  Triple H provided no consideration in December 2016 in exchange for receiving the Triple

H Royalty Deeds.

12.      Triple H has filed claims against Debtors in their bankruptcy cases asserting a right

to receive payments for royalty obligations allegedly owed under the Triple H Royalty Deeds.

13.      The dealings regarding the Triple H Royalty Deeds were unfair to Blackjewel and

the other Plaintiffs.  Hoops had a personal financial and familial interest in the dealings regarding

the Triple H Royalty Deeds.  Those dealings were never approved by disinterested members of the

board of Blackjewel or the other Plaintiffs.  On information and belief, the dealings regarding the

Triple H Royalty Deeds and Hoops' personal interest therein were never fully or properly disclosed

to the board of Blackjewel or any other Plaintiff.

**UNJUSTIFIED GRAZING RIGHTS AND PAYMENTS TO TRIPLE H**

14.     On December 7, 2017, Blackjewel entered into an Asset Purchase Agreement with affiliates of Contura Energy, Inc. whereby Plaintiff Blackjewel purchased two mines in Wyoming and, among other things, assumed various obligations related to these mines.   As part of Blackjewel's agreement to assume obligations associated with the Wyoming mines, Blackjewel became entitled to grazing rights on the surface property overlaying the mines.

15.     The grazing rights were reflected in, among other things, certain leases whereby third parties agreed to pay for grazing rights on the property (the leases and the associated grazing rights for the property the "Grazing Rights").

16.     Hoops caused the Grazing Rights associated with the Wyoming mines and the grazing leases to be transferred to Triple H rather than Blackjewel.  Triple H did not provide any consideration for receipt of the Grazing Rights.  Blackjewel was entitled to the Grazing Rights in consideration of its agreement to perform obligations concerning the associated mines.  Triple H did not agree to, and did not, perform any such obligations.

17.     Triple H received significant payments on account of the Grazing Rights.   On information and belief, Triple H received no less than $218,401 from the period from January through August 2018 and budgeted revenue of over $251,000 in 2019 from the Grazing Rights.

18.     The transfer of grazing rights to Triple H was unfair to Blackjewel and the other Plaintiffs.  Hoops had a personal financial and familial interest in the transfer of the Grazing Rights to Triple H.  The transfer was never approved by disinterested members of the board of Blackjewel or the other Plaintiffs.  On information and belief, the dealings with Triple H regarding the Grazing Rights were never fully or properly disclosed to the board of Blackjewel or any other Plaintiff.

**IMPROPER AND SELF-INTERESTED DEALINGS WITH CRS**

19.     Hoops caused CRS to be formed in the fall of 2018.  CRS was formed to perform

construction and other services in connection with reclamation activity at mining locations, such as those associated with Debtors' mining operations.

20.    CRS was formed with employees from Blackjewel and resources belonging to Blackjewel.  Prior to the formation of CRS, the work performed by CRS was performed by Blackjewel, including with employees and resources of Blackjewel.

21.    After the formation of CRS, Hoops caused Blackjewel to enter into numerous self-interested transactions with CRS where CRS was guaranteed a profit.

22.    Upon information and belief, equipment owned by Blackjewel was frequently used by CRS without any consideration being provided to Blackjewel.

23.    Hoops caused Plaintiffs to engage in transactions with CRS where CRS was guaranteed a profit.  On information and belief, Hoops caused Blackjewel and potentially other Plaintiffs to pay CRS its costs plus a guaranteed 10% profit for work performed for Blackjewel and other Plaintiffs.

24.    On information and belief, CRS performed work for Plaintiffs using equipment belonging to Plaintiffs.

25.    The dealings between CRS and Plaintiffs were unfair to Blackjewel and the other Plaintiffs.  Hoops had a personal financial and familial interest in the dealings between Plaintiffs and CRS.  Those dealings were never approved by disinterested members of the board of Blackjewel or the other Plaintiffs.  On information and belief, the dealings with CRS and Hoops' personal interest therein were never fully or properly disclosed to the board of Blackjewel or any other Plaintiff.

**LC-RC ROYALTY ASSIGNMENT**

26.    Plaintiff Revelation entered in a certain Transaction Agreement dated July 31, 2015

and a certain Asset Purchase Agreement dated July 31, 2015 (collectively the "Alpha Transaction Documents") with related counterparties referred to collectively as "Alpha."  Pursuant to the Alpha Transaction Documents, Revelation (a) received rights to certain permits, contracts, real property, and tangible personal property, among other assets, related to 39 real properties located in Virginia and Kentucky, and (b) agreed to pay certain royalty payments to Alpha based on coal mining activities at the properties.

28. Various disputes arose between Revelation and Alpha, including Revelation's contention that Alpha owed millions of dollars for equipment that was not delivered to Revelation in connection with the Alpha Transaction Documents.

28. Revelation and Alpha eventually resolved those disputes pursuant to a Settlement Agreement and Mutual Release dated May 24, 2019 (the "Alpha Settlement Agreement").  The Alpha Settlement Agreement included LCC, among others, as a party and resolved certain disputes between LCC and Alpha.  Pursuant to the terms of the Alpha Settlement Agreement, Revelation gave up its claims against Alpha related to undelivered equipment and Alpha gave up its claims against Revelation for royalty payments allegedly owed by Revelation.  Rather than terminate the royalty obligations allegedly owed by Revelation that Alpha was giving up, Hoops caused Revelation to assign the alleged royalty obligations to LC-RC, a subsidiary of LCC.

29. Accordingly, Hoops arranged for a certain Assignment of Agreement dated May 24, 2019 between Alpha, as assignor, and LC-RC, as assignee (the "LC-RC Assignment").  A true and accurate copy of the LC-RC Assignment is attached hereto as Exhibit D and incorporated herein by reference.

30. Pursuant to the LC-RC Assignment, Hoops obligated Revelation to pay to LC-RC royalties allegedly owed by Revelation under the Alpha Transaction Documents.  LC-RC provided

no consideration for assignment of the royalty obligations allegedly owed by Revelation to other parties.

31.     Revelation did not receive fair or appropriate consideration for its release of claims against Alpha under the Alpha Settlement Agreement because, rather than providing that royalty claims against Revelation were released, Hoops caused the royalty claims to be assigned to LC-RC, in which he and members of his family held a beneficial interest.  The assignment of alleged royalty obligations to LC-RC never approved by disinterested members of the board of Revelation or the other Plaintiffs.  On information and belief, the dealings with LC-RC and Hoops' personal interest therein were never fully or properly disclosed to the board of Revelation or any other Plaintiff.

32.     LC-RC has filed claims against Debtors in their bankruptcy cases asserting a right to receive payments for royalty obligations ostensibly assigned pursuant to the LC-RC Assignment.

**MR COAL "FACTORING" ARRANGEMENTS**

33.     Hoops engaged in self-interested and improper dealings with Revelation whereby Hoops received millions of dollars of payments and purported interest related to Blackjewel's dealings with MR Coal Marketing & Trading LLC ("MR Coal").

34.     In 2016, 2017, and after, Revelation supplied coal to MR Coal and was owed receivables from MR Coal, which were paid after MR Coal in turn sold the purchased coal to third-party buyers.

35.     In 2016, Hoops created an arrangement whereby he received payments of amounts from both Blackjewel and MR Coal related to Blackjewel's sale of coal to MR Coal.  Hoops caused Revelation Energy, LLC to enter into a purported Factoring and Security Letter Agreement dated November 14, 2016 (the "MR Factoring Agreement"), a true and accurate copy of which is

attached hereto as Exhibit E and incorporated herein by reference.  The MR Factoring Agreement purports to document an agreement between Revelation, MR Coal, and Hoops whereby Hoop could advance certain amounts to Revelation and be repaid from amounts payable by MR Coal to Blackjewel.

36.     Hoops signed the MR Factoring Agreement as President of Revelation and in his individual capacity.  Another officer also signed for Revelation.  Debtors' business records do not include any copy of the MR Factoring Agreement signed by MR Coal.

37.     The MR Factoring Agreement states that Hoops could advance up six million dollars to Revelation and was granted a security interest in all amounts payable by MR Coal to Blackjewel arising out of or relating to the sale or disposition of coal.  The MR Factoring Agreement states that Revelation would repay the advanced funds to Hoop with 15% per annum interest in equal installments for 12 weeks "or longer if necessary."  The MR Factoring Agreement also states that MR Coal would make direct payments to Hoop in the amount of $525,000 from amounts otherwise owed to Revelation until the advanced funds and interest were paid in full.

38.     On information and belief, Hoops engaged in transactions with Revelation involving funds and interest payments related to MR Coal prior to the MR Factoring Agreement. The MR Factoring Agreement states that it was intended to "clarify and set forth the understanding . . . with respect to certain pending financial matters."

39.     Hoops caused  Plaintiff Revelation to enter into a purported First Amendment to Factoring and Security Letter Agreement dated February 14, 2017 (the "MR Factoring Amendment"), a true and accurate copy of which is attached hereto as Exhibit F and incorporated herein by reference.  The MR Factoring Agreement purports to document an amendment to the MR Factoring Agreement increasing the rate of interest paid by Revelation to Hoops to 20% per

annum.

40.    Debtors' business records do not include any copy of the MR Factoring Amendment signed by MR Coal.

41.    Hoops received numerous payments from Revelation and MR Coal related to repayment of alleged advances in connection with sales of coal to MR Coal, including payments purportedly related to the MR Factoring Agreement and the MR Factoring Amendment.

42.    Hoops dealings with Revelation related to alleged advances in connection with sales of coal to MR Coal, including but not limited to, the MR Factoring Agreement and the MR Factoring Amendment (individually and collectively the "MR Coal Dealings"), were improper and unfair to Revelation.

43.    The terms of the MR Coal Dealings were unfair to Blackjewel.  Among other things, the interest rate paid to Hoops was unfair and excessive.

44.    Hoops had a personal financial interest in the MR Coal Dealings.  The MR Coal Dealings were never approved by disinterested members of the board of Revelation or the other Plaintiffs.  On information and belief, the MR Coal Dealings and Hoops' personal interest therein were never fully or properly disclosed to the board of Revelation or any other Plaintiff.

45.    Even according to the improper and unfair terms of the MR Factoring Agreement and MR Factoring Amendment, Hoops received inappropriate payments to which he was not entitled.  Revelation paid interest to Hoops on the basis of a six million dollar advance for periods when he advanced far less than that.  Additionally, Revelation paid interest to Hoops on the principal amounts of advances without reducing that amount based on prior payments.  Hoops also far exceeded the limit on advanced amounts, for which he received excessive interest.

## COUNT ONE
### (Breach of Fiduciary Duty – Against Hoops
### as to Transactions and Dealings between Plaintiffs and Triple H, LC-RC, and CRS)

46.     Plaintiffs re-allege and incorporate by reference, as if fully rewritten herein, the allegations contained in the foregoing paragraphs 1-45 of the Complaint.

47.     Hoops owed fiduciary duties to Plaintiffs, including duties of care and loyalty. Consistent with these duties, Hoops was obligated to act in a disinterested, good faith, and independent manner to serve the best interests of Plaintiffs.  Hoops' duty of care to Plaintiffs required, among other things, Hoops to ensure that transactions involving Plaintiffs were fair to them and served their interests.

48.     Hoops also had a duty of good faith and was required to exercise good faith in all of his dealings with and on behalf of the Plaintiffs, including with respect to any transactions between Plaintiffs and Defendants.

49.     Hoops breached his fiduciary duties and duty of good faith to Plaintiffs in connection with the dealings between Plaintiffs and Defendants, including but not limited to, regarding the Triple H Royalty Deeds, the Grazing Rights, improper and self-dealing transactions with CRS, the Alpha Settlement Agreement, and LC-RC Assignment, the failure to terminate royalty obligations allegedly owed by Revelation, the MR Coal Dealings, and numerous other self-interested transactions between Plaintiffs and Defendants.

50.     Hoops breached his fiduciary duties by causing Plaintiffs to enter into transactions and engage in dealings with Defendants where the terms of those transactions and dealings were unreasonable and unfair to Plaintiffs.  Hoops breached his duty of loyalty by causing Plaintiffs to engage in transactions in which Hoops had financial and other personal interests.  Hoops also

breached his duties by failing to make proper or complete disclosures regarding self-dealing transactions with Defendants and by acting in a self-interested fashion.

51.     Hoops also breached fiduciary duties by failing to make complete or accurate disclosures regarding the transactions between Plaintiffs and Defendants, including but not limited to, regarding Hoops' financial, personal, and familial interests in them.   Hoops caused the transactions between Plaintiffs and himself and other Defendants to occur without receiving appropriate authorization based on full and accurate disclosure.

52.     Hoops preferred Defendants' and his own interests over the interests of Plaintiffs because of his and his family's financial interest in Defendants.  Hoops own communications make this clear.  In a December 21, 2016 email to his family members, Hoops described one of the Triple H Royalty Deeds as an obligation that "could pay $150 million to $300million over the next 20-30 years on every ton mined at Black Mountain that will come into Triple H."  In the same email, Hoops referred to his family's interests, the Revelation payments providing "serious money for the future," the need to "get on top of everything we control through LCC as there is a lot more," and the fact that they should "start seeing significant income next year as Revelation owes most of this and still owes us a lot."  Hoops own words make clear that he was acting with an intention to enrich himself and his family at the expense of Plaintiffs.

53.     Hoops' breaches were motivated by his personal financial and familial interests, including his desire to move assets beyond the reach of creditors, and was an intentional, willful, and wanton disregard of his fiduciary duties to Plaintiffs.   Hoops' conduct was undertaken maliciously for the purpose of injuring Plaintiffs by stripping them of valuable assets in order to enrich Defendants for the benefit of himself and his family members.

54.     As a direct and proximate result of Hoops' breaches of his fiduciary duties and duty
of good faith, Plaintiffs have been damaged in an amount to be proven at trial, including the fair
market value of the assets that were improperly transferred. In addition, because Hoops' conduct
was malicious, intentional, willful and wanton, Plaintiffs are entitled to and demand an award of
punitive damages against him.

**COUNT TWO**
**(Aiding and Abetting Breach of Fiduciary Duty – Against Non-Hoops Defendants)**

55.     Plaintiffs re-allege and incorporate by reference, as if fully rewritten herein, the
allegations contained in the foregoing paragraphs 1-54 of the Complaint.

56.     Triple H, LC-RC, and CRS aided and abetted Hoops in breaching his fiduciary
duties to Plaintiffs, including by facilitating Hoops' efforts to strip Plaintiffs of their valuable assets
and transfer them to Defendants.

57.     Triple H, LC-RC, and CRS knew that Hoops' owed fiduciary obligations to
Plaintiffs.

58.     Triple H, LC-RC, and CRS knew that Hoops' was breaching fiduciary duties to
Plaintiffs by causing them to enter into transactions that were unfair to Plaintiffs.  Triple H, LC-
RC, and CRS knew that Hoops was breaching fiduciary duties to Plaintiffs by Hoops causing
Plaintiffs to transfer assets to them for far below market value.  This knowledge was based on,
among other things, statements by Hoops like those in Hoops December 21, 2016 email.  On
information and belief, Hoops made other statements to representatives of Defendants regarding
the improper and unreasonable nature of the transactions and the intent to benefit Defendants at
Plaintiffs' expense.

59.     Defendants provided substantial assistance to Hoops' breaches of fiduciary duty by
participating in and continuing the unfair dealings with Plaintiffs and by taking and using

Plaintiffs' assets without appropriate or reasonable compensation.  CRS provided substantial assistance by taking and using Plaintiffs' equipment without consideration.  Triple H and LC-RC provided substantial assistance by entering into transactions with Plaintiffs and by signing agreements that deprived Plaintiffs of property interests without fair or reasonable consideration, and by accepting the benefits of those transactions.

60.     Plaintiffs have been injured by Defendant's actions.  Defendant's actions have proximately caused damages to Plaintiffs in an amount to be proven at trial.  Because Triple H, LC-RC, and CRS acted with gross fraud, malice, and oppression, and through willful, wanton, and reckless conduct in aiding and abetting Hoops' breaches of fiduciary duties, Plaintiffs are entitled to an award of punitive damages against Defendants.

### COUNT THREE
### (to Avoid Constructively Fraudulent Transfers Under 11 U.S.C. § 548)

61.     Plaintiffs re-allege and incorporate by reference, as if fully rewritten herein, the allegations contained in the foregoing paragraphs 1-60 of the Complaint.

62.     Each transfer of a valuable asset by Plaintiffs to Defendants or incurrence of an obligation by Plaintiffs to Defendants, including the Triple H Royalty Deeds, transfer of Grazing Rights, the transfer to or use of equipment by CRS for no consideration, the obligation to pay royalties to LC-RC by operation of the Alpha Settlement Agreement and LC-RC Assignment, and payment of ostensible interest to Hoops in connection with the MR Coal Dealings (each a "Transfer") was a transfer of an interest of the Plaintiffs in property to, or an obligation incurred by Plaintiffs for the benefit of, Defendants.

63.     The Plaintiffs did not receive reasonably equivalent value for any of the Transfers. Defendants did not provide adequate consideration or fair market value for any of the Transfers.

64.    At the time of each Transfer, the Plaintiffs were:  (a) insolvent, or rendered insolvent as the result of the Transfer; (b) engaged in business or a transaction, or were about to engage in business or a transaction, for which the Plaintiffs' remaining property was an unreasonably small capital; and/or (c) the Plaintiffs intended to incur, or believed or reasonably should have believed that they would incur, debts that would be beyond their ability to pay as such debts matured.

65.    Each Transfer should be avoided as a constructively fraudulent transfer.  The Plaintiffs are entitled to, and the Court should enter, judgment against Defendants avoiding each Transfer received by Defendants pursuant to section 548 of the Bankruptcy Code and/or providing other relief the circumstances may require.

66.    Each Transfer can and should be avoided as to Defendants and as to any subsequent transferee.

**COUNT FOUR**
**(to Avoid Constructively Fraudulent Transfers Under 11 U.S.C. § 544 and
the West Virginia Uniform Fraudulent Transfers Act)**

67.    Plaintiffs re-allege and incorporate by reference, as if fully rewritten herein, the allegations contained in the foregoing paragraphs 1-66 of the Complaint.

68.    Each Transfer also can and should be avoided pursuant to section 544 of the Bankruptcy Code and applicable state law.  Pursuant to section 544(b) of the Bankruptcy Code, the Plaintiffs (as debtors-in-possession) have the rights of existing unsecured creditors.  Section 544(b) permits the Plaintiffs to assert claims and causes of action that such a creditor could assert under applicable state law.

69.     Each of the Transfers can and should be avoided pursuant to West Virginia law. Plaintiffs did not receive reasonably equivalent value for any of the Transfers.  Defendants did not provide adequate consideration or fair market value for any of the Transfers.

70.     At the time of each Transfer, the Plaintiffs were insolvent, or rendered insolvent as the result of the Transfer within the meaning of West Virginia Code § 40-1A-5(a).

71.     At the time of each Transfer, the Plaintiffs were engaged or were about to engage in a business or a transaction for which the remaining assets of the Plaintiffs were unreasonably small in relation to the business or transaction within the meaning of West Virginia Code § 40-1A-4(a)(2)(i).   At the time of each Transfer, the Plaintiffs intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due within the meaning of West Virginia Code § 40-1A-4(a)(2)(ii).

72.     The Plaintiffs are entitled to, and the Court should enter, judgment against Defendants avoiding each Transfer received by Defendants pursuant to section 544 of the Bankruptcy Code and applicable West Virginia law and/or providing other relief the circumstances may require.

73.     Each Transfer can and should be avoided as to Defendants and as to any subsequent transferee.

## COUNT FIVE
### (To Recover Avoided Transfers Under 11 U.S.C. § 550)

74.     Plaintiffs re-allege and incorporate by reference, as if fully rewritten herein, the allegations contained in the foregoing paragraphs 1-73 of the Complaint.

75.     Defendants were the initial transferee of the Transfers.

76.     To the extent that the Transfers are avoided pursuant to sections 544 and 548 of the Bankruptcy Code, as requested herein, the Plaintiffs are entitled to recover, for the benefit of their

estates and creditors, the value of the avoided Transfers from Defendants, pursuant to section 550 of the Bankruptcy Code.

77.     Accordingly, the Plaintiffs are entitled to judgment against Defendants, and any subsequent transferee of Defendants, in an amount not less than the value of the avoided Transfers, plus pre- and post-judgment interest, attorneys' fees and costs pursuant to section 550 of the Bankruptcy Code.

## COUNT SIX
### (for Declaratory Relief Regarding Preservation of Avoided Transfers and Disallowance of Claims by Defendants)

78.     Plaintiffs re-allege and incorporate by reference, as if fully rewritten herein, the allegations contained in the foregoing paragraphs 1-77 of the Complaint.

79.     Pursuant to section 551 of the Bankruptcy Code, any transfer avoided under sections 544 or 548, among other things, is automatically preserved for the benefit of the debtor's estate with respect to property of the estate.  Pursuant to section 541(a)(4) of the Bankruptcy Code, any property preserved for the benefit of the debtor's estate under section 551 of the Bankruptcy Code constitutes property of the debtor's estate.

80.     Pursuant to section 502(d) of the Bankruptcy Code, any claim by an entity that is a transferee of a transfer avoidable under sections 544 or 548 is disallowed unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable.

81.     The Court can and should order and enter a declaratory judgment that the Transfers are automatically preserved for the benefit of the Plaintiffs' estates and constitute property of the Plaintiffs' estates, pursuant to sections 541(a)(4) and 551 of the Bankruptcy Code.  The Court can and should order and enter a declaratory judgment that all claims by Defendants against the

Plaintiffs or any Debtors are disallowed unless and until Defendants have paid the amount of the Transfers to the Plaintiffs.

## COUNT SEVEN
### (Unjust Enrichment against CRS)

82.    Plaintiffs re-allege and incorporate by reference, as if fully rewritten herein, the allegations contained in the foregoing paragraphs 1-81 of the Complaint.

83.    CRS has been unjustly enriched by its receipt and use of equipment belonging to Plaintiffs without compensation.   The use of the equipment and other equipment without compensation to Plaintiffs, with the corresponding depreciation and impact to their conditions, represents an unjust benefit to and enrichment of CRS.

84.    The transfer and use of Plaintiffs' equipment without compensation conferred a benefit on CRS.  CRS's use of the equipment was detrimental to Plaintiffs.

85.    CRS was and is aware of the unjust enrichment and did not compensate Plaintiffs for its unjust enrichment.  It would be inequitable to allow CRS to retain the benefit of the unjust enrichment to the detriment of Plaintiffs.

86.    Plaintiffs have been damaged by the unjust enrichment of CRS to the detriment of Plaintiffs.  CRS should be required to compensate Plaintiffs for its unjust enrichment.  Principles of equity dictate that CRS compensate Plaintiffs and make them whole for CRS's unjust enrichment.

## COUNT EIGHT
### (Unjust Enrichment against Triple H)

87.    Plaintiffs re-allege and incorporate by reference, as if fully rewritten herein, the allegations contained in the foregoing paragraphs 1-86 of the Complaint.

88.     Triple H has been unjustly enriched by its receipt of the Triple H Royalty Deeds and the Grazing Rights, together with all payments pursuant thereto.  Triple H provided no consideration for the Triple H Royalty Deeds or the Grazing Rights, which were improperly diverted to them by Hoops.  This represents an unjust benefit to and enrichment of Triple H.

89.     The transfer of the Triple H Royalty Deeds and the Grazing Rights and the receipt of payments thereunder conferred a benefit on Triple H.  Triple H's retention of the Triple H Royalty Deeds and the Grazing Rights was detrimental to Plaintiffs.

90.     Triple H was and is aware of the unjust enrichment and did not compensate Plaintiffs for its unjust enrichment.  It would be inequitable to allow Triple H to retain the benefit of the unjust enrichment to the detriment of Plaintiffs.

91.     Plaintiffs have been damaged by the unjust enrichment of Triple H to the detriment of Plaintiffs.  Triple H should be required to compensate Plaintiffs for its unjust enrichment. Principles of equity dictate that Triple H compensate Plaintiffs and make them whole for Triple H's unjust enrichment.

## COUNT NINE
### (Unjust Enrichment against LC-RC)

92.     Plaintiffs re-allege and incorporate by reference, as if fully rewritten herein, the allegations contained in the foregoing paragraphs 1-91 of the Complaint.

93.     LC-RC has been unjustly enriched by its receipt of the LC-RC Assignment, together with all payments pursuant thereto.  LC-RC provided no consideration for the LC-RC Assignment, which was improperly diverted to LC-RC by Hoops.  This represents an unjust benefit to and enrichment of LC-RC.

94.     The transfer of the LC-RC Assignment and the receipt of payments thereunder conferred a benefit on LC-RC.  LC-RC's retention of the LC-RC Assignment was detrimental to Plaintiffs.

95.     LC-RC was and is aware of the unjust enrichment and did not compensate Plaintiffs for its unjust enrichment.  It would be inequitable to allow LC-RC to retain the benefit of the unjust enrichment to the detriment of Plaintiffs.

96.     Plaintiffs have been damaged by the unjust enrichment of LC-RC to the detriment of Plaintiffs.  LC-RC should be required to compensate Plaintiffs for its unjust enrichment. Principles of equity dictate that LC-RC compensate Plaintiffs and make them whole for LC-RC's unjust enrichment.

## COUNT TEN
### (for Equitable Subordination of any Claims by Triple H, LC-RC, and CRS)

97.     Plaintiffs re-allege and incorporate by reference, as if fully rewritten herein, the allegations contained in the foregoing paragraphs 1-96 of the Complaint.

98.     Defendants Triple H, LC-RC, and CRS (the "Subordinated Defendants") have engaged in a pattern of improper and inequitable conduct concerning Plaintiffs.  The Subordinated Defendants  have used their relationship with Hoops to obtain assets and payments to the detriment of Plaintiffs and the other Debtors, their creditors and their bankruptcy estates and to shift obligations on Plaintiffs' to their detriment and the Subordinated Defendants' improper benefit. The Subordinated Defendants stripped assets from Plaintiff without providing value to Plaintiffs and on terms that were unreasonable and bore no relation to arms'-length dealing.

99.     Plaintiffs' and the other Debtors' creditors were directly and substantially harmed by the Subordinated Defendants' conduct.  Unsecured creditors of Plaintiffs and the other Debtors

are less likely to recover the full amounts due them because of the Subordinated Defendants' inequitable conduct.

100.    Under principles of equitable subordination, all claims that have been or may be asserted by the Subordinated Defendants against Plaintiffs, including proofs of claim and claimed rights of setoff or recoupment, should be subordinated for purposes of distribution, pursuant to sections 510(c) and 105(a) of the Bankruptcy Code, such that the Subordinated Defendants' claims are not paid or recognized for value ahead of any other creditor.

101.    Equitable subordination of the Subordinated Defendants' claims is consistent with the purposes and provisions of the Bankruptcy Code

102.    For the reasons alleged in this Count Ten, to the extent that the Subordinated Defendants are determined to have a lien on property of Plaintiffs' estates, the Court should enter an order transferring such lien to Plaintiffs, pursuant to sections 510(c)(2) and 105(a) of the Bankruptcy Code.

WHEREFORE, Plaintiffs demand judgment against the Defendants as follows:

(a)    On Count One, that the Court award Plaintiffs a money judgment against Hoops in an amount to be determined at trial, including punitive damages, plus costs and attorneys' fees;

(b)    On Count Two, that the Court award Plaintiffs a money judgment against Triple H, CRS, and LC-RC in an amount to be determined at trial, including punitive damages, plus costs and attorneys' fees;

(c)    On Counts Three and Four, that the Court enter an order avoiding each of the Transfers to Defendants under sections 544 and 548 of the Bankruptcy Code and applicable West Virginia law and/or providing other relief the circumstances may require;

(d)    On Count Five, that the Court enter an order requiring Defendants to pay or otherwise turn over to Plaintiffs the Transfers, or in the alternative, grant a money judgment against Defendants in an amount not less than the total value of the Transfers, together with pre- and post-judgment interest at the maximum legal rate under 28 U.S.C. § 1961 from the earliest date allowed by law until the date of judgment or until paid or turned over in

full, as applicable;

(e) On Count Six, that the Court enter a judgment declaring that the Transfers to Defendants are preserved for the benefit of the Plaintiffs' estates and that all claims against the Plaintiffs and the Debtors by LC are disallowed unless and until Defendants have turned over the Transfers to Plaintiffs or paid Plaintiffs the value of the Transfers;

(f) On Count Seven Eight, and Nine, that the Court enter an order requiring CRS, Triple H, and LC-RC to return and disgorge all elements of unjust enrichment with interest or, as appropriate, pay a money judgment to Plaintiffs corresponding to the amount of unjust enrichment to those Defendants;

(g) On Count Ten, that the Court enter an order subordinating all claims that have been or may be asserted by the Subordinated Defendants against Plaintiffs, including proofs of claim and claimed rights of setoff or recoupment, pursuant to sections 510(c) and 105(a) of the Bankruptcy Code, such that Subordinated Defendants' claims are not paid or recognized for value ahead of any other creditor, and an order directing that the Subordinated Defendants transfer to Plaintiffs any liens securing the subordinated claims; and

(h) That the Court grant Plaintiffs all such additionally relief to which they may be entitled at law or in equity, including costs and reasonable attorneys' fees.

Dated: December 10, 2020                    Respectfully submitted,

                                            **SUPPLE LAW OFFICE, PLLC**

                                            Joe M. Supple No. 8013
                                            801 Viand St.
                                            Point Pleasant, WV 25550
                                            304-675-6249
                                            joe.supple@supplelaw.net

                                            – and –

                                            **SQUIRE PATTON BOGGS (US) LLP**

                                            */s/ Scott A. Kane*
                                            Stephen D. Lerner (admitted *pro hac vice*)
                                            Scott A. Kane (admitted *pro hac vice*)
                                            Nava Hazan (admitted *pro hac vice*)

F. Maximilian Czernin (admitted *pro hac vice*)
Travis A. McRoberts (admitted *pro hac vice*)
201 E. Fourth Street, Suite 1900
Cincinnati, Ohio 45202
Telephone: 513.361.1200
Facsimile: 513.361.1201
stephen.lerner@squirepb.com
scott.kane@squirepb.com
nava.hazan@squirepb.com
max.czernin@squirepb.com
travis.mcroberts@squirepb.com

*Co-Counsel for the Plaintiffs-Debtors and
Debtors-in-Possession*